IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> $61,870.52 IN U.S. CURRENCY SEIZED FROM BANK OZK ACCOUNT NUMBER XXXXXX0668, <br><br> Defendant. | Civil Action No. |

## VERIFIED COMPLAINT FOR FORFEITURE

COMES NOW plaintiff United States of America, by Bobby L. Christine, Acting United States Attorney, and Sekret T. Sneed, Assistant United States Attorney, for the Northern District of Georgia, and shows the Court the following in support of its Verified Complaint for Forfeiture:

## NATURE OF THE ACTION

1. This is a civil forfeiture action against $61,870.52 in United States currency, held in a bank account at Bank OZK in the name of Shannon Parish, that is subject to forfeiture based upon an investigation by Homeland Security Investigation involving fraud under the Coronavirus Aid, Relief and Economic Security ("CARES") Act.

## THE DEFENDANT IN REM

2. The Defendant *in rem* consists of $61,870.52 in U.S. Currency maintained in Bank OZK account number xxxxxx0668 in the name of Shannon Parish seized by Federal law enforcement officers, pursuant to a Federal seizure warrant, on or about August 28, 2020 ("Defendant Funds").

3. The Defendant Funds are presently within the jurisdiction of this Court and are being held in a government account maintained by the United States Customs and Border Protection.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1355.

5. This Court has *in rem* jurisdiction over the Defendant Funds pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district.

6. Venue is proper in this district pursuant to 28 U.S.C. §§ 1355(b)(1)(A), 1391 and 1395.

## BASIS FOR FORFEITURE

7. The Defendant Funds are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) on the grounds that the funds constitute or were derived from proceeds traceable to violations of 18 U.S.C. § 1343 (wire fraud) and 18 U.S.C. § 1344 (bank fraud).

8. The Defendant Funds are also subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) on the grounds that they constitute property involved in a

transaction or an attempted transaction in violation of 18 U.S.C. §§ 1956 and/or 1957, or is property traceable to such property.

## FACTUAL BACKGROUND

*The Paycheck Protection Program and*

*the Economic Injury Disaster Loan Program*

9. On March 29, 2020, the Coronavirus Aid, Relief, and Economic Security ("CARES") Act was enacted into federal law.

10. The CARES Act was designed to provide emergency financial assistance to millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic.

11. One source of relief provided by the CARES Act was the authorization of up to $349 billion in Small Business Administration ("SBA")-guaranteed forgivable loans to small businesses through the Paycheck Protection Program ("PPP").

12. Over $300 billion in additional PPP funding was authorized by Congress in April 2020.

13. In order to obtain a PPP loan, a qualifying business must submit a PPP loan application which must be signed by an authorized representative of the business.

14. The PPP loan application requires the business, through its authorized representative, to acknowledge the program rules.

15. The loan application also requires the business to make certain affirmative representations and certifications in order to be eligible to obtain the PPP loan.

16. In the PPP loan application, the small business, through its authorized representative, must state, among other things, its average monthly payroll expenses and its number of employees.

17. Those figures are used to calculate the amount of money the small business is eligible to receive under PPP.

18. Further, businesses applying for a PPP loan must provide documentation showing their payroll expenses.

19. PPP loan proceeds must be used by the business on certain permissible expenses: payroll costs, interest on mortgages, rent, and utilities.

20. The SBA also created the Economic Injury Disaster Loan ("EIDL") program in response to the COVID-19 pandemic.

21. The EIDL program was designed to provide economic relief to small businesses that were experiencing a temporary loss of revenue due to COVID-19.

22. EIDL proceeds must be used by the business on certain permissible expenses such as the continuation of healthcare benefits, rent, and utilities.

*Fraudulent CARES Act and EIDL Loan Applications*

*by Entities Controlled by Shannon Parish*

**I. PR Transportation, Corp. and PR Express Logistics Apply for PPP Loans**

### A. PR Transportation Corp. PPP Loan Application

23. Between on or about April 30, 2020 and on or about August 5, 2020, Shannon Parish ("Parish"), a resident of Atlanta, Georgia, submitted nine separate PPP and EIDL loan applications through the CARES Act.

24. Parish's reported address was 880 Lorrimont Lane, Fairburn, Georgia 30213("Lorrimont Lane residence").

25. A search of the Georgia Corporations Division public website showed that Parish was listed as the registered agent, Chief Executive Officer ("CEO"), Chief Financial Officer ("CFO"), and Secretary of PR Transportation Corp. ("PR Transportation").

26. PR Transportation's listed address identical to Parish's Lorrimont Lane residence.

27. The available filing history showed the PR Transportation was originally incorporated by Parish on or about September 12, 2018.

28. It also showed that, on or about August 26, 2019, the Georgia Secretary of State ("SOS") involuntarily or administratively dissolved PR Transportation for failure to file its annual registration.

29. On or about May 15, 2020, Parish reinstated PR Transportation with the Georgia SOS.

30. Parish maintained a personal checking account at Bank OZK in her name, account number xxxxxx0668 ("Bank OZK 0668"), using her Lorrimont Lane residence.

31. According to SBA records, on or about April 30, 2020, Parish submitted a PPP loan application in support of a $21,922 PPP loan for PR Transportation.

32. On the application, the borrower was listed as PR Transportation doing business as PR Express Logistics, with Parish listed as the principal.

33. In the Use of Proceeds section of the loan application, Parish represented that 100 percent of the proceeds would be used to cover payroll costs.

34. Parish reported PR Transportation's average monthly payroll was $8,769.00 and listed herself as the only employee.

35. As part of the application, Parish submitted an IRS Form W-3, Transmittal of Wage and Tax Statements 2020 for PR Transportation, which showed wages as $99,865.36 and having paid state income tax in the amount of $5,364.00.

36. The application was approved, and the loan was funded on or about May 15, 2020, by Customers Bank, an FDIC-insured financial institution and SBA-approved lender that participated as a PPP lender to small businesses.

37. On or about May 19, 2020, Bank OZK 0668 received a deposit in the amount of $21,922.00.

### B. PR Express Logistics PPP Loan and EIDL Loan Applications

38. The Georgia Corporations Division website showed that PR Express Logistics was incorporated on or about April 1, 2019, and that Parish was listed as its registered agent and incorporator.

39. PR Express Logistics had a reported address of 3645 Marketplace Boulevard, Suite 130, East Point, Georgia 30344.

40. The website revealed PR Express Logistics was active, but in Non-Compliance.

41. On or about May 1, 2020, Parish submitted another PPP loan application, through Ready Capital, LLC, an agent that paired PPP applicants with lenders, in support of a $21,000 PPP loan for PR Express Logistics.

42. In the Use of Proceeds section of the loan application, Parish represented that 100 percent of the proceeds would be used to cover payroll costs, lease, and utilities.

43. Parish reported PR Express Logistics's average monthly payroll was $8,400 and listed herself as the only employee.

44. With her loan application, Parish provided IRS Form 941 for 2020, Employer's Quarterly Federal Tax Return, which was marked as reporting wages and earnings for the fourth quarter of 2020 as $94,000.00 with $5,708.00 in federal taxes withheld.

45. Ready Capital, LLC processed the application and submitted it to Customers Bank for funding.

46. On or about May 11, 2020, Bank OZK received a deposit in the amount of $21,000.00.

47. On or about July 9, 2020, Parish submitted another loan application in the name of PR Express Logistics, through the SBA's Economic Impact Disaster Loan ("EIDL") Program, in support of a $51,500 EIDL Loan.

48. In the Use of Proceeds section of the EIDL loan application, Parish represented that $51,400 of the proceeds would be used for Economic Injury and $100 would be used for a UCC filing fee.

49. Parish also listed the business name as PR Transportation but reported that it was doing business as PR Express Logistics.

50. In her EIDL loan application, Parish failed to report the prior SBA loans.

51. In her application, she listed the physical address as her Lorrimont Lane residence.

52. On or about July 13, 2020, Bank OZK 0668 received a deposit in the amount of $51,400.00.

**II. Shannon Parish, d/b/a About Town Apply for a PPP Loan.**

53. On or about May 21, 2020, Parish submitted a PPP loan application in the name of Shannon Parish, d/b/a About Town, in support of a $20,833 PPP loan, through Kabbage, another authorized lender in the SBA Paycheck Protection Program.

54. A search of the Georgia Corporations Division website did not result in any information for Shannon Parish, d/b/a About Town.

55. As part of the loan application, Parish provided an IRS Form Schedule C for the year 2019 bearing her name, address, and social security number.

56. The IRS form listed the income for that company in 2019 as $97,600.42.

57. Parish also provided copies of bank statements from PenFed Credit Union showing a zero balance since October 2019.

58. Parish also provided a copy of a February 2020 bank statement for Bank OZK 0668 that showed a negative balance of $-132.70.

59. Further, Parish provided a $7,000 invoice from About Town to Natalie Vargas at 8104 Webb Road, Riverdale, Georgia 30274.

60. That address was previously associated with Parish.

61. On or about June 1, 2020, Kabbage notified Parish that, after the loan was reviewed by its Business Support Team, her loan application was rejected.

62. On or about June 16, 2020, Parish submitted a second loan application, in the name of Shannon Parish, d/b/a About Town, in support of a $20,300 PPP loan.

63. In that instance, Parish submitted the second loan application through Customers Bank.

64. Documents received from Customers Bank through the SBA showed that Parish reported the same basic identifying information, such as her address, phone number, and social security number, as in her other applications.

65. In her second About Towns loan application, Parish reported that her average monthly payroll was $8,133.00 and she listed herself as the sole owner and employee.

66. As part of the loan application, Parish provided an IRS Form Schedule C for the year 2019 bearing her name, address, and social security number, as well as the income for the company in 2019 as $97,600.42.

67. The documents also included a scanned image of a voided check drawn on Bank OZK 0668, and a photograph of a second voided check also drawn on Bank OZK 0668.

68. The loan was approved and funded by Customers Bank and, on or about June 24, 2020, Bank OZK 0668 received a deposit in the amount of $20,300.00.

### III.  Red Rose Boutique, Inc. Applies for a PPP Loan.

69. On or about June 24, 2020, Parish submitted a PPP loan application in the name of Red Rose Boutique, Inc. ("Red Rose Boutique"), in which she requested a $20,540 PPP loan.

70. Red Rose Boutique was incorporated in Georgia on or about May 15, 2017, with Corporation Service Company initially listed as the registered agent, and Parish as the incorporator.

71. On or about September 7, 2018, the corporation was administratively dissolved by the State of Georgia.

72. On or about June 9, 2020, Red Rose Boutique was reinstated by Parish, with Parish as the registered agent and a principal address of 1415 Highway 85 NE, Suite 355, Fayetteville, Georgia 30214.

73. Parish was also listed as the CEO, the CFO, and the Secretary, with the business address being her Lorrimont Lane residence and the registered office address listed as 3645 Marketplace Blvd., Suite 130, East Point, Georgia, 30344.

74. On her loan application, Parish reported that her average monthly payroll was $8,216 and she listed herself as the sole owner and employee.

75. As part of the application, Parish provided an IRS Form 941 for 2019, Employer's Quarterly Federal Tax Return, which showed the 4th Quarter earnings for the company as $24,650.00, as well as a photograph of a voided check drawn on Bank OZK 0668.

76. The loan was approved in the amount of $20,500.00 and funded by Customers Bank, and on or about July 10, 2020, Bank OZK 0668 received a deposit in the amount of $20,500.00.

### IV.   Fierce Red, Inc. Applies for PPP and EIDL Loans.

77. On or about June 2, 2020, Parish submitted a PPP loan application through First Home Bank in the name of Fierce Red, Inc. ("Fierce Red") in support of a $20,750 PPP loan.

78. As part of the application, Parish submitted an IRS Form 1120, a United States Corporation Income Tax Return, for 2019.

79. The form showed gross receipts or sales for Fierce Red in the amount of $99,600.00.

80. The application was approved, and the loan was funded.

81. On or about June 15, 2020, First Home Bank disbursed a check payable to Fierce Red in the amount of $20,700.00 and sent it to Parish at her 880 Lorrimont Lane address.

82. On or about August 4, 2020, Parish applied, and was approved, for an SBA EIDL loan in the name of Fierce Red in the amount of $49,000.00 by Customers Bank.

83. The business address reported by Parish was her 880 Lorrimont Lane address, and she listed herself as the only employee and the principal of the business.

84. On or about August 5, 2020, Customers Bank disbursed an electronic credit to Bank OZK 0668 in the amount of $48,900.00, and the following day, the funds were deposited to Bank OZK 0668.

**V. Infinity Paralegals Professionals, P.C. Applies for a PPP Loan.**

85. On or about July 13, 2020, Parish submitted a loan application through Lendio and Fountainhead CC, in the name of Infinity Paralegals Professionals, P.C., in support of a $125,000 EIDL loan.

86. As part of the application, Parish reported an average monthly payroll of $50,000.00 with five employees.

87. In support of her application, Parish submitted an IRS Form 941 for each quarter of 2019, in which she reported that the company paid wages in the amount of $150,000.00.

88. On or about July 15, 2020, Fountainhead CC requested additional documents to corroborate payroll from Parish.

89. On or about July 17, 2020, Parish informed Fountainhead CC that she decided to apply through a different bank and withdrew her application.

90. Bank OZK 0068's Bank Statements

91. A review of Bank OZK 0068's bank statements showed that Parish opened the account on or about November 18, 2019.

92. The investigation revealed that, prior to the deposits from the PPP and EIDL loans, the balance in the account was nominal and sometimes negative.

93. Following the SBA loan deposits, there were several transactions in Bank OZK 0668, including, but not limited to, the following purchases or payments:

   i. $9,150 to Atlanta Sod Company;
   ii. $5,400 to The Blind Guys, potentially for window blinds
   iii. $2,060 to Certa Pro Painters;
   iv. $5,206 to Fayetteville Smiles, potentially for dental implants;
   v. $18,091.44 in cash withdrawals;
   vi. $750 to Royal Caribbean, potentially a down payment on a cruise;
   vii. Approximately $4,000 in several transactions to Best Buy;
   viii. $1,800 for fireworks;
   ix. $3,340.25 to Celine, an online website that sold high-end purses;
   x. $1,051.30 to Pier 1;
   xi. $2,500 to AT&T, potentially for new phones;
   xii. $2,950 to Square for an unknown purchase;
   xiii. Approximately $8,000 in several transactions to Christian Louboutin;
   xiv. $1,971.06 to Lyght House Cocktail Lounge;

      xv.     $683.00 to Tower Beer & Wine;

     xvi.     $1,524.60 to crawfish Shack;

    xvii.     $402.89 to Cakes by N*;

   xviii.     $2,000 to a rental plaza; and

     xix.     $3,095 to Amachi Med Spa.

94. The bank records also showed cash transfers to cash apps and checks made payable to Parish.

95. None of those transactions were consistent with the authorized use of the proceeds obtained through the CARES Act.

96. Information from the United States Department of Labor Office of Inspector General ("DOL-OIG") and the Georgia Department of Labor for Parish's individual and company wage showed that Parish had not been reporting wages, either for herself or any of her companies, through her social security number or employer tax identification numbers in several years.

97. Additionally, DOL-OIG reported that Parish had filed for unemployment insurance benefits in or about March 2017.

98. On or about July 10, 2020, Homeland Security Investigations ("HSI") initiated an investigation into the activities of Shannon Parish.

99. By August 6, 2020, Parish had received approximately $184,022.00 in loan proceeds in Bank OZK 0668, with other proceeds received by other financial instruments.

100. On or about August 10, 2020, HSI obtained a Federal seizure warrant for funds held in Bank OZK 0668.

101. On or about August 28, 2020, Bank OZK provided a cashier's check in the amount of $61,870.52 in response to the seizure warrant.

### *Administrative Proceedings*

102. As required, within 60 days after seizure, on or about September 9, 2020, CBP provided written notice of the seizure to Parish.

103. On or about October 19, 2020, Parish submitted a claim to CBP as to the Defendant Funds, contending that $692.00 represented social security payments; $60,080.27 represented proceeds of valid loans; and, the remaining amounts represented "Digit Savings" that were transferred into her account when the balance of her bank account dropped below a zero balance, and requested a referral to the U.S. Attorney for judicial proceedings.

### *Conclusion*

104. Based on the foregoing, the Court should forfeit the Defendant Funds, pursuant to 18 U.S.C. § 981(a)(1)(C), because they are or are derived from proceeds traceable to violations of 18 U.S.C. § 1343 (wire fraud) and 18 U.S.C. § 1344 (bank fraud), and, pursuant to 18 U.S.C. § 981(a)(1)(A), because they are property involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 and 1957 (money laundering), or is property traceable to such property.

WHEREFORE, the United States prays as follows:

1. That the Court forfeit and condemn the Defendant Funds to the United States of America;

2. That the Court award the United States the costs of suit incurred in this action; and,

3. That the Court grant such other relief as the Court deems just and proper.

Dated: This 19th day of January 2021

> BOBBY L. CHRISTINE
>   *Acting United States Attorney*
>   600 U.S. Courthouse
>   75 Ted Turner Drive SW
>   Atlanta, GA 30303
>   (404) 581-6000   fax (404) 581-6181
>
> SEKRET T. SNEED
>   *Assistant United States Attorney*
>   Georgia Bar No. 252939
>   sekret.sneed@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>v.<br><br>$61,870.52 IN U.S. CURRENCY SEIZED FROM BANK OZK ACCOUNT NUMBER XXXXXX0668,<br><br>  Defendant. | Civil Action No. |

**VERIFICATION OF COMPLAINT FOR FORFEITURE**

I, Ruben M. Fernandez, have read the Complaint for Forfeiture in this action and state that its contents are true and correct to the best of my knowledge and belief.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed this  18 th day of January 2021.

*Ruben M. Fernandez*
Ruben M. Fernandez
Special Agent, U.S. Department of
Homeland Security, Homeland
Security Investigations

## CERTIFICATE OF COMPLIANCE

I hereby certify, pursuant to Local Rules 5.1 and 7.1D, that the foregoing brief has been prepared using Book Antiqua, 13 point font.

/s/ Sekret T. Sneed
*Assistant United States Attorney*
